<div align="right">NEW YORK,<br>October, 1816.<br><br>JACKSON<br>v.<br>VAN BUREN.</div>

Judgment for the defendant.

———◦❊◦———

## JACKSON, ex dem. VALKENBURGH, against VAN BUREN.

THIS was an action of ejectment, tried before Mr. Justice *Van Ness*, at the *Columbia* circuit, in *January*. 1815.

The lessor of the plaintiff is the son and heir of *Maryche*, (*Maria*,) a daughter of *Peter Martin Van Buren*, who was married to *Jerome Van Valkenburgh*. She died before the revolutionary war, and her husband after the war. *Peter*, the lessor's elder brother, died before the war, without issue.

It was admitted that *Peter Martin Van Buren* was seised, in 1720, of an undivided ninth part of *De Bruyn's* patent, in the town of *Kinderhook*. He left six chileren, to wit; *Cornelius, Barent, Tobias, Martin, Eytie,* and *Maria,* or *Maryche*.

Evidence having been given of the existence and loss of the original will of *Peter Martin Van Buren*, made in 1722, a copy thereof was read in evidence, and which contained the following clauses : " I give to my daughter *Eytie Vosburgh*, wife of *Martin Vosburgh*, the house in which she now lives, with five *morgan* of land with it; and twenty-five *morgan* of woodland, and twenty-five *morgan* of pine wood, where she pleases to take the same, out of the right of *De Bruyn's* patent, which I have acquired by deed from *Johannes Van Alen*, for her, her heirs and assigns, for ever." " Also, I will that my youngest daughter, *Maryche Van Buren*, shall have a decent outset, so as her sister *Eytie* has had, &c. and twenty-five *morgan* of woodland, and twenty-five *morgan* of pine-wood, out of the right of *De Bruyn's* patent aforesaid, to her, and her heirs and assigns, for ever." The testator gave to his four sons equal shares of *De Bruyn's* patent, except what he had before devised.

The plaintiff read in evidence an act passed the 4th of Fe-

<div align="right" style="font-size:smaller">One hundred acres of land, in a certain patent, were devised to M, where she pleased to take the same, and to her heirs and assigns for ever. It was held that no title to any particular part of the patent vested in M., and she not having made any election in her lifetime, the right of election was gone, and could not be exercised by her heirs, especially after a lapse of 40 years from the death of the devisee.</div>

*bruary*, 1794, confirming a division and exchange of a certain tract of land in *Kinderhook* granted to *John Hendricks De Bruyn*. The partition was made in 1793, by which lot No. 1., of the third allotment, and lot No. 2., of the first allotment, fell to the share of *Peter Martin Van Buren*. The plaintiff also gave in evidence articles of agreement made in 1792, to which the defendant was a party, confirming the exchange, and authorizing the partition referred to in the above-mentioned act.

A written notice, dated the 1st of *August*, 1813, signed by the lessor, was served on the defendant, which referring to the will of *P. M. Van Buren*, and the devise to his daughter *Maria*, stated that he, the lessor, as heir at law of the said *Maria*, gave notice that for the remainder of the land, which was still due under the said devise, he had located upon, and chosen, lot number *one*, of the third allotment, and fifteen acres of the eastern part of that portion of lot No. 2, of the first allotment of *John E. Van Alen's* division of the said patent, &c., as is now in his, the defendant's, possession; which said lots No. 1. and No. 2., upon the division aforesaid, were allotted to the heirs and representatives of *P. M. Van Buren*.

The defendant was in possession of about half of lot No. 1., and of the eastern part of lot No. 2., on which the defendant's house stands.

*C. Van Alen*, a witness for the defendant, testified that No. 7. of the 7th allotment of *De Bruyn's* patent fell to the share of *Peter Martin Van Buren*, containing 290 acres. That the lessor of the plaintiff, in 1794, after *John E. Van Alen's* survey, made a location on 51 acres lying west of the *Albany* road, as heir of his mother, according to the will of *P. M. Van Buren*, by cutting a possession fence around it, and declaring that he took it under the will; and the witness purchased 25½ acres of this lot of the lessor, which he held under that title; and the residue was held by other purchasers, from the heirs of *P. M. Van Buren*. The witness had contracted to purchase of the lessor the whole of the 51 acres, but got a deed for one half only; the other half being in possession of persons claiming under the heirs of *P. M. Van Buren*, who refused to let him have it. This was considered pine land. The lessor got his oak land in another part of the patent. The witness advised the lessor, as his location was resisted by the possessors, to give it up. The lessor, accordingly, gave it up, and said he would locate elsewhere, on a lot lying east of the post road. The land in the

possession of the defendant was considered by some of the wit-
nesses as oak land, and by others consisting of oak and pine
land.

A verdict was taken for the plaintiff, by consent, subject to
the opinion of the court on a case agreed upon, containing the
facts above stated.

*Van Vechten*, for the plaintiff, contended that the right of
election given to *Maria Van Buren*, descended to her heirs,
and might, therefore, be exercised by the lessor of the plaintiff.[*] 

> [*] 9 *Vin. Abr.*
> 359. 361 362,
> 363. *Election,*
> (B.) (C.) (D.)

*Van Buren*, (Attorney-General,) contra, insisted that the right
of election must be exercised in the lifetime of the devisee or
grantee, and was not descendible.[†] That it would be against
justice and good policy to allow it to be exercised after a lapse
of near a century, from the death of the testator. He relied on
the case of *Vandenbergh* v. *Van Bergen*,[‡] as in point.

> 260. 36 b. 37 a.
> Moore. 691. Cro.
> Eliz. 819 2
> Bulst. 7
>
> [†] 2 Co 37.
> Dyer, 287. An-
> ders, 11. Hob.
> 174.
>
> [‡] Ante, p. 212.

*Van Vechten*, in reply, said, that the devise ought to be carried
into effect, so far as it could be done consistently with the rules
of law. The testator clearly showed his intention that the in-
terest devised should vest; and if so, it was a descendible in-
terest. The devise was to *M.*, and her heirs and assigns.
There was no limitation as to the person who was to make it ;
and the cases cited to show that the right of election must be
exercised in the lifetime of the person to whom it was given,
were not applicable. Besides, it was in the power of the ad-
verse party to quicken the exercise of the right of election, as
soon as the lessor was in a situation to make it.

YATES, J., delivered the opinion of the court. The devise
to *Maryche* was intended, by the testator, to be the same (as to
the right of election) with the one to his daughter *Eytie*, and
must be governed by the same legal principles. She had a
right, then, to locate the twenty five *morgan* of pine wood land
where she pleased ; and, until the location had been made by
her, the lands thus devised in severalty could not be distin-
guished, or taken from the residue, owned by the testator in
*De Bruyn's* patent ; and it remained wholly uncertain to what
part of them she would have this right in severalty, or to which
part such right would attach, until the act was consummated by

her; for this reason no estate, or interest, in any particular part of those lands could pass to her, presently, by *the devise*, but depended upon the previous act of election to be made by her; and she not having thought proper to make it in her lifetime, it is important to examine whether the right can be extended to her heirs.

In 2 *Coke's Rep.* 36, 37., (*Heyward's Case*,) it is stated, that when nothing passes to the feoffee, or grantee, before the election, to have one thing or the other, then the election ought to be made in the lifetime of the parties, and the heir, or executor, cannot make the election; and *Bullock's Case* of 10 *Eliz.* 281., is there cited from *Moore,* 81. in which it is stated, that if the heir of the feoffee should make the election, he would be in as a purchaser; for nothing passes to the feoffee before election; and, by the law, he cannot be a purchaser, for then the words (his heirs) were words of limitation.

The case of *Vandenbergh* v. *Van Bergen* (*Ante,* 212.) is, in some measure, applicable to this. There the defendant, under a deed for certain lands in *Coxsackie* patent, with full liberty and license to erect and build a mill on any place at or on the *Coxsackie Creek*, with liberty of ground and stream of water, claimed the right of overflowing the plaintiff's land, which was held by the grantor, at the date of the defendant's deed; this court decided, that though the grantee, in his lifetime, would have had a right to erect a mill on the creek, and to have overflowed, so far as was reasonable and necessary, the land of the plaintiff, adjacent to the creek, which land had been purchased from the defendant's grantor, subsequent to the date of his deed, yet, not having elected to erect the mill in his lifetime, the right became extinct at his death. So here the right was potential; and rested entirely upon the location and election to be made by the devisee. She was not vested in her lifetime with the title to any particular parcel. By virtue of the will, her election and location were necessary to consummate the title, and she never having designated the land, the exercise of the right, by the heir, is gone, particularly as the claim is interposed upwards of forty years after the death of the ancestor. But this need not be urged in the decision of the present cause; for, admitting that the right to elect was not confined to the ancestor, and that it descended to the heir, there can be no doubt but that, in this instance, the heir has, by a previous elec-

tion of other lands, extinguished all possible claim to the pre-mises in question.

It appears, by the case, that in 1794, the year after *John E. Van Alen's* survey, the lessor of the plaintiff elected to locate 51 acres, or 24 morgan, at another place, as heir of the devisee, according to the will; that he made an entry on the land, and cut a possession fence around it, and actually sold 25 1-2 acres parcel of it, which is now held under that title; but to avoid a law-suit with persons claiming under other devisees, he thought proper to abandon his claim to the residue. If he had any right to make his election, it is extinguished by that location as to any other lands owned by the testator. No acts could be more prominent; he openly avowed his intention, took possession, and sold part of the land. He was, consequently, obliged, there-after, to confine his claim under the devise to his mother, to those lands, and cannot now resort to other property in the pa-tent *belonging to the testator; it would be extending an unrea-sonable latitude to the exercise of a right of this description; and, in its consequences, would be attended with fraud and injustice to bona fide purchasers.* The election thus made by the heir, therefore, independent of the reasons before assigned, is suffi-cient to entitle the defendant to judgment.

Judgment for the defendant.